Turley, J.
delivered the opinion of the court,
The right of trial by jury has always been regarded by the English and American jurists as one of the most sacred principles of the law, one to which the citizen is more deeply indebted than to any other for that security to life, liberty and property guaranteed in Great Britain and the United States to an extent unknown in other countries, and the preservation of which in its purity and independence, has at all times been guarded with a most watchful and jealous eye. Therefore it is, that an attempt whenever made by the courts to interfere with the privileges of a jury, and endanger their independence, and the consequent security of the subject, has at all times been promptly resisted, and though, occasionally, in times of great political excitement in England, it may have succeeded for the day, yet to the honor of the legal profession, the usurpation has always been rebuked, and the proper balance of power between the court and the jury quickly restored. It is a well understood maxim of our law, that the judges are to expound the law, and the jury to ascertain the facts, neither of which has the power to interfere with the province of the other. *535 The jury in their deliberations upon the facts are pendent of the court, as the judge in determining the Jaw'is of the jury; and the consequence is, that when a case has been submitted to a jury, there it must remain until it has been decided by them, or is withdrawn from their consideration, not at the will and pleasure of the court, but under circumstances justified by the law. In the case now presented for the consideration of this court, the jury returned no verdict, and the case was taken from their consideration, and they discharged against the consent of the prisoner. And the question is, whether under the circumstances, this was not an illegal exercise of power on the part of the court below, and the prisoner of consequence, entitled to her discharge? This is a question of much importance, and although it has not, perhaps been directly settled by adjudicated cases in this State, we feel much relieved in the conviction that it is well settled both by principle and authority in England, and a very respectable portion of the States of this Union. Lord Coke in his 1 Institute, 227,. b, and 3 Institute, 100, lays it down as a genera] rule that a jury sworn and charged by the court in cases affecting life or member cannot be discharged by the court, or any other, but they ought to give their verdict. This doctrine upon the authority of Coke, was afterwards engrafted by Hawkins and Blackstone into their elementary treatise on the criminal law. And although this principle was controverted in the case of Eerras cited in Sir Thomas Raymond, 84, and in a case of larceny reported in 1 Ventress, 69, and one reported in Salkeld, 646; yet it cannot be said to have been fully examined and completely overruled, until the decision of the case of the two Kinlocks, reported in Foster from page 22 to 40, when it was considered by all the judges but one that the general rule laid down by Lord Coke had no authority to warrant it, .and could not be universally binding; but, that there were exceptions To it, and in that case determined that the court had power to discharge a jury at the request of the prisoners, assisted by able counsel, and with the intent of imparting to them a privilege which they could not otherwise have enjoyed. Since that decision it has not been doubted that the courts haye the power to discharge as *536 iuries without their rendering; a verdict, but only as we think J cases of manifest necessity. All the cases of exception (to the general rale as laid down by Lord Coke,) specified in the elaborate opinion of Mr. Justice Foster in the case of the Kinlocks, ate cases of necessity, and there is no authority to he found in the English books which sustains the position, that a jury may be discharged in a criminal case without the consent of the prisoner, but from necessity. Such also, we think, has been the train of the decisions in the United States.
In the case of The People vs. Goodwin, 18 Johnson’s Reports, 187, Judge Spencer, in delivering the opinion of the court, says, “Upon full consideration, I am of opinion, that although the power of discharging a jury is a delicate and highly important trust, yet that it does exist in cases of extreme and absolute necessity.”
In the case of the United Slates vs. Coolridge, Gallison’s Rep. 364, Justice Story says “that the power to discharge a jury in capital cases should only be exercised in very extraordinary and striking circumstances.”
In the case of the United States vs. Haskell and Francois, 4 Wash. 411, Judge Washington says, “that a court is fully authorised to discharge a jury in cases of necessity in capital cases as well as misdemeanors.”
In the case of the United States vs. Perez, 9 Wheaton, 579, Judge Story, in delivering the opinion of the court, says, “We think that in all cases the law has invested courts with the authority to discharge a jury from giving a verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would be defeated; but that the power ought to be used with the greatest caution under urgent circumstances, and for very plain and obvious causes, and in capital cases especially the court should be extremely careful how they interfere with any of the chances of life in favor of the prisoner.”
In the case of The People vs. Barrett, Livingston, Judge, says, “Without denying the right of courts to withdraw a juror, in criminal cases, and put the defendant on his trial a sec *537 ond time, it is evident this power should not be lightly used, but confined as much as may be to cases of urgent necessity, when by the act of God, or by some sudden and unforeseen accident it is impossible to proceed without manifest injustice to the public or to the defendant himself.”
These decisions made by the first tribunals of the country, completely sustain the position that the power to discharge a jury, without a verdict, is not the exercise of an arbitrary discretion, but an extremely delicate duty, only to be perfoimed in cases of urgent necessity.
This brings us to the examination of what constitutes this ■necessity. We are of opinion that the causes which create this necessity may be classed under three heads. 1st. Where ¡the court is compelled by law to be adjourned before the jury can agree upon a verdict. 2d. Where the prisoner, bj^his own misconduct, places it out of the power of the jury to investigate his case correctly, thereby obtaining an unfair advantage of the State, or is himself, by the visitation of providence, prevented from being able to attend to his trial; and 3d. Where there is no possibility for the jury to agree upon and return a verdict.
It is upon the last of these propositions that the question in the case under consideration arises. The jury were em-pannelled on Thursday evening, at 2 o’clock, and were discharged at 9 o’clock on Friday morning, because they could not agree upon a verdict, the court continuing its session until sometime on the Saturday following. Now, the question is, was this such a case of necessity as justified the court in discharging the jury? A jury may not be able to agree upon a verdict for many reasons, such as sickness or insanity of one or more of the jurors, exhaustion of the jury before they have been able to come to a decision of the case, the absconding of one of the jurors, without the consent of the court. These are cases put in the books, and with others of like character, constitute what we will distinguish as cases of physical impossibility. A jury may also not be able to agree because their minds cannot come to the same conclusion from the facts submitted to their consideration. This, we would consider as a case of moral impossibility; and we are called upon to say whether it constitutes a *538 necessity for the discharge of a jury before the time arrives when the court must adjourn. We think it does not. In the case of the' Kinlodas, Mr. Justice Foster enumerates many cases in which from ne«#ssity a jury may be discharged, and never onceintimat, s that it may be done-merely because they could not bring their minds to concur in the same opinion. It cannot be possible that he should have neglected doing so if in his opinion it had constituted a case of necessity, for it would be so palpable a course for the exercise of this delicate power, and would be of such frequent occurrence, that no judge could overlook it in enumerating the causes for which a jury might be discharged from rendering a verdict. Indeed, it is almost manifest that Mr. Foster was of opinion that it did not constitute a case of necessity, for in commenting upon Man-sel’sacase, he says, “the truth of the case was no more than this, the jury were not agreed on any verdict at all, and therefore nothing.' remained to be done by the court but to send them, back and keep them together until they should agree to s.uch a verdict as the court could have received and recorded.
There is no English decision then sustaining the position that the court has the power to discharge a jury because they cannot agree upon a verdict, unless there be some physical impossibility connected with it, and so we think is the spirit of all the American authorities when properly understood.
In the cases of the Commonwealth vs. Cook and others, 6 Serg. and Rawle, 577, and the Commonwealth vs. Clue, 3 Rawle’s Reports., the supreme court of Pennsylvania have decided that an inability of the jury to agree is no ground for discharging them, and in Haskell and Francois’ case, 4th Washington Rep. 411, Judge Washington says he entirely concurs with the supreme court of Pennsylvania, in the opinion in Cook’s case, 6 Serg. and Rawl,* that the court ought not to discharge a jury merely upon the ground that they say they cannot agree, however positive the declaration may be. These cases are of very high authority, and we consider the reasoning satisfactory.
But it is said that they are contradicted by the decisions of .the supreme court of the United States and other States of the Union,. We will briefly examine the casesreferred to *539 by the attorney general for the support of this assertion. The first case is that of the United States vs. Perez, 9 Wheaton, 579. The facts of this case as stated in Wheeler’s Criminal Cases are very strong, and if the supreme court of the United States had determined that they constituted a case of necessity ,”sthere would have been no way of reconciling the case with the Pennsylvania decisions. This was a case ‘of piracy, and the jury were discharged in less than four hoúrs; ’surely no one can doubt that it was a rash and hasty exercise of power on the patt of the circuit court. Upon the propriety of it, the judges were divided in opinion, and the case was certified to the supreme court of tile Unitéd States, when the case was determined, not upon the ground that the facts constituted a case of necessity in the opinion of the supreme court', but because, as Judge Story says, the court below had the power to order the discharge, and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests in this, as in other cases, upon the ■responsibility of the judges under their oaths of office; or in other words, the exercise of the power to discharge, being an' act of discretion, it must rest with the court below, and that the supreme court will not reverse it. In our opinion, this decision does not conflict with the cases in Pennsylvania.
The next case we will examine, is that of the Commonwealth vs. John Bowden, 9 Mass. 494, there a jury was discharged after being out a part of a day and a whole night, •and it was held by the court not to be a discharge of the prisoner — this was a case of highway robbery. The question 'does not appear to have been elaborately investigated, for so far as we can judge from the argument of the counsel for the prisoner, it turned upon the point of whether the court had power, under any circumstances to discharge a jury without the consent of the prisoner, for the. argument was, that in a capital case the jury could not be discharged with the consent of the prisoner, nor in any criminal case, without such consent. The court say, that the strictness of the law, upon this subject has very much abated in the English courts-, and that it would not be consistent with the genius of our government to use compulsory means to effect an agreement among *540 furors. So that it seems to us, that the question, as to whe-a necessity ior the utsebarge oí the -jury m this case ex- . J , . ° ■ , ■ r , isted, was never brought to the consideration ot the court, an(j ^bat on]y can be considered as an authority in favor of the power of the court to discharge a jury in case of neces-" sity. Moreover it may be observed, that in Massachusetts-the practice continued of keeping a jury after' the case had been submitted to them without refreshment, until they liad agreed upon the verdict, and that the court considered it wrong to resort to such means to compel a verdict. The same remarks may be made of the case of the People vs. Alcot, 2 John. Cases in Error, dOl. The question was, as to the power of the court to discharge a jury in criminal cases, and Judge Kent, who delivered the opinion of the court, places it upon the ground of necessity, and says, “the moment cases of necessity are admitted to form exceptions, that moment a door is opened to the discretion of the- court to judge of that necessity, and to determine what combination of circumstances will create one; and that it must be a pretty clear case of an abuse of discretion to induce- them to say, that the court below ought not to have-discharged the jury. This was also a case of misdemeanor, and the court expressly guard against an expression of opinion, as to what would have been their decision upon the facts presented had the case been capital.
In the case of the People vs. Godwin, 18 John. Rep. 188, the jury was not discharged till within half an hour before the adjournment of the court; and in the opinion of the court delivered by Judge Spencer, he says, that whenever in cases of felony, a jury has deliberated so long upon a prisoner’s case, as to preclude all reasonable expectation that they will agree on a verdict, without being compelled to do so-from famine and exhaustion, it becomes a case of necessity and they may be discharged. And that in the present case we consider the discharge of the jury a discreet exercise of the powers of that court, either on the ground that the jury had been kept together so long as to preclude all hope of their agreeing, unless compelled by famine or exhaustion, or on the ground, that the powers of the court were to terminate *541 within a few minutes, and that it was morally certain, the jury would not agree within that period, which produced an absolute necessity for discharging them. This case, then, instead of conflicting with the Pennsylvania decisions, is in our opinion, in full accordance with them. In the case of The State vs. Waterhouse, Mar. & Yer. Rep., the supreme court of the State of Tennessee, have, determined, that in capital cases the courts have a discretionary power to dis* charge a jury, where they cannot agree, but they expressly negatived the idea that it may be exercised without a supervising control, for they say there are cases where a- court would act verj improperly in discharging a jury, but they do not pretend to'Specify the cases where it may be done, and where it may not. The case connot then be considered as doing more than deciding that the discharge of the jury is not ipso facto, a discharge of the prisoner, but must depend upon the necessity of so doing, and that if the necessity do not exist, it is an improper exercise of power, and upon a writ of error the prisoner will be discharged. We therefore think, there is no well adjudicated case conflicting with the decision of the supreme court of Pennsylvania, because in no case referred to was the question, as to what constituted a necessity to discharge, brought to the consideration of the court, and nothing but the question, as to the power so to do, upon a fit case made out.
The reasoning of the case in Pennsylvania, we have said, is to our minds entirely satisfactory. If a moral impossibility for a jury to agree, without being attended with some physical impossibility, constitutes a case of necessity, it is manifest that the decisions of the inferior court can never be reversed. For how tan the superior court know whether the jury could have agreed or not, and how long shall the inferior court be compelled to keep the jury together, before it shall be warranted in saying, that they cannot possibly agree? shall it be an hour, a day, a week, or a month?
Upon the whole, the power of discharging a jury, agaiust the consent of the prisoner, is of such a dangerous character, that we hesitate not in saying that it should not be exercised by the courts, where the jury cannot agree on a ver- *542 ■ diet, unless they be prevented by a physical impossibility from so doing, and that when such impossibility does not exist, the jury should be kept together until such time as the court is about to adjourn, when, of necessity, they must be discharged. This is the situation of the case under considertion. There was no physical impossibility for the jury to agree, and they were discharged at least twenty-four hours before the court adjourned, which was an improper exercise of the power, on the part of the court, and the judgment must therefore be reversed and the prisoner discharged.
Judgment reversed.